1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTHA WATROUS, | ) 1:04-5893-cv-SMS |
| | ) |
| Plaintiff, | ) DECISION AND ORDER ON SOCIAL |
| | ) SECURITY COMPLAINT (DOC. 1) |
| | ) |
| v. | ) ORDER DIRECTING REMAND PURSUANT |
| | ) TO SENTENCE FOUR of 42 U.S.C. § |
| JO ANNE B. BARNHART, | ) 405(g) |
| Commissioner of Social | ) |
| Security, | ) ORDER DIRECTING THE CLERK TO |
| | ) ENTER JUDGMENT FOR PLAINTIFF |
| Defendant. | ) BERTHA WATROUS AND AGAINST |
| | ) DEFENDANT JO ANNE B. BARNHART |
| | ) |

        Plaintiff is represented by counsel and is proceeding in

forma pauperis with an action seeking judicial review of a final

decision of the Commissioner of Social Security (Commissioner)

denying Plaintiff's application for a period of disability,

disability insurance benefits (DIB), and supplemental security

income (SSI) benefits under Titles II and XVI of the Social

Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the

parties have consented to the jurisdiction of the Magistrate

Judge to conduct all proceedings in this matter, including

1

ordering the entry of final judgment.[1] The matter is currently

before the Court on the parties' briefs, which have been

submitted without oral argument to the Honorable Sandra M.

Snyder, United States Magistrate Judge.

PRIOR PROCEEDINGS

On June 7, 2000, Plaintiff filed a claim for SSI benefits

under Title XVI of the Act and an application for DIB benefits

under Title II of the Act, respectively, alleging disability

beginning on August 19, 1998, due to major depressive disorder,

recurrent with psychotic features; mood swings; and auditory

hallucinations commanding Plaintiff to hurt herself. (A.R. at

106-09.) On August 30, 2001, Plaintiff filed for SSI benefits

alleging disability since 1996 due to major depression, severe,

with psychotic overtones. (A.R. 619-622.)[2] Plaintiff's claim was

denied initially and on reconsideration. (Id. at 88-99.)

Plaintiff requested a hearing before an administrative law judge

(ALJ) of the Social Security Administration (SSA). On April 22,

2003, Plaintiff appeared with an attorney and testified before

the ALJ, James E. Ross. On June 24, 2003, the ALJ denied

Plaintiff's application for benefits. (Id. at 18-24.) Plaintiff

appealed the ALJ's decision to the Appeals Council. (Id. at 12.)

On April 30, 2004, the Appeals Council denied Plaintiff's the

request for review. (Id. at 9-11.)

---

[1] On November 17, 2004, District Judge Robert E. Coyle ordered the case assigned to the undersigned Magistrate Judge for all purposes.

[2] Plaintiff reported in 2000 that the conditions affecting her included back pain (A.R. 123, 153-55), and her medical records included materials regarding treatment of her back pain (A.R. 125, 145, 150-52). Her statement made in connection with the request for hearing indicated that she continued to have back pain with specified limitations (A.R. 150.)

On June 28, 2004, Plaintiff filed the complaint in the instant action. Defendant filed the administrative record on November 8, 2004; a supplemental transcript of poorly photocopied pages was filed on March 16, 2005. On February 4, 2005, Plaintiff filed an opening brief with exhibits. On April 7, 2005, Defendant filed a brief in opposition. On April 21, 2005, Plaintiff filed a reply brief.

<u>ADMINISTRATIVE FINDINGS</u>

The Commissioner found that Plaintiff had severe impairments of depression and anxiety that did not meet or medically equal listed impairments. Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels and was able to understand, remember, and carry out simple one- and two-step job instructions with little, if any, contact with the public. Plaintiff could perform her past relevant work or, alternatively, other work. (A.R. 23.)

<u>ISSUES PRESENTED</u>

The following issues are presented for decision:

1) Whether the ALJ's rejection of Plaintiff's credibility was supported by legally adequate reasons that were in turn supported by substantial evidence;

2) Whether the ALJ's rejection of all or part of the opinions of Plaintiff's treating physicians and consultative examiners was made pursuant to correct legal standards and was supported by substantial evidence;

3) Whether the ALJ failed to evaluate Plaintiff's exertional limitations; and

4) Whether the ALJ failed to evaluate Plaintiff's past

1 relevant work.

2                                    FACTS

3       I. Plaintiff's Testimony

4       Plaintiff, born on May 29, 1957, testified that she was

5 forty-five at the time of the hearing (Tr. 53). She had completed

6 the twelfth grade (Tr. 53). She was five feet eight inches tall

7 and weighed over 230 pounds. She could read and write fairly

8 well. (Tr. 53.) She did not drive a car. Plaintiff reported that

9 she was paranoid, anxious, and distressed with a short attention

10 span; she heard voices that made her hallucinogenic. Her mind

11 raced. (Tr. 54-55). Plaintiff liked to do crafts but could not do

12 them very long because she had a short attention span. She tried

13 to help clean her house but did not do that so well. She

14 sometimes liked to be around people. She tried to read and do

15 Bible studies but got anxious and could not do it. Once in a

16 while she did laundry. She could not do shopping, dishes, or

17 cooking because she could not stand very long. (Tr. 55-56.)

18       Plaintiff stopped using drugs and alcohol when she shot her

19 previous husband in 1996 and was thereafter incarcerated. (Tr.

20 56-57.) Her symptoms had improved; she still heard voices telling

21 her to do things, but it was not as bad as it had been, and she

22 had not hurt anyone else. (Tr. 57.) She had attempted suicide a

23 few times and thought that the last time had been a couple of

24 years ago, but she could not remember. (Tr. 57.) She was last

25 hospitalized for depression about a year before the hearing. (Tr.

26 57-58.) Her medication helped, but she still had problems. She

27 went monthly to her doctor and to a counselor when she needed or

28 if they called her to go. (Tr. 54.)

                                      4

Plaintiff's psoriasis was semi-controlled; she still had it on her elbows. (Tr. 58.) She still had back problems but got treatment for it. (Tr. 58.) Her doctor was keeping an eye on her liver and cholesterol. (Tr. 59.)

Plaintiff reported having worked at a potato shed; in 1997 and 1998 she worked spraying chemicals on cotton. (Tr. 53, 63.) She also worked as a certified nursing assistant for a private patient from May 2000 through August 2000; Plaintiff prepared meals and took care of a lady. (Tr. 64-65.)

II. <u>Medical History</u>

A. <u>Mental Condition</u>

Since 1997, Plaintiff was treated by the Kern County Mental Health Department (Tr. 20, 518, 515-567, 573-585, 606-618). Treating reports sometimes noted that Plaintiff's status was "controlled" (Tr. 517, 521, 528, 532, 534, 536, 539, 543, 546, 558, 559, 566). At other times, it was noted that Plaintiff felt better, was doing fine, or had no complaints (Tr. 583, 531, 538, 542, 545). She was seen by a psychiatrist for medicine evaluations and also was involved in group therapy sessions (Tr. 20, 519, 529-530, 541, 548, 551-555). Medication was prescribed for Plaintiff's depression, anxiety, paranoia, and sleeping difficulties (Tr. 20, 560, 537, 530, 519, 575-576).

In August 2000, Plaintiff was seen by consultative examiner Rhoda Bernardez, M.D., who performed a comprehensive psychiatric evaluation and diagnosed depression with psychosis; rule out major depressive disorder with psychosis, dysthymia with psychosis, and polysubstance-induced mood disorder with psychosis; and alcohol, speed, and cocaine abuse were in

remission. Her GAF was 45. Prognosis was guarded. (Tr. 20,
331-336). Her last suicide attempt was in February 2000, when she
cut her wrist. She reported two previous hospitalizations (Fresno
and Kern psychiatric wards). Plaintiff had shot her husband in
response to voices but no longer abused drugs and alcohol.
Plaintiff reported voices telling her to hurt or kill herself or
to stab someone, anxiety, paranoid delusions about people always
after her, crying spells, constant suicidal ideation, mood
swings, anhedonia, poor sleep, and fatigue; she denied auditory
or visual hallucinations or active suicidal or homicidal
ideation. With the medications she felt better than she did
previously, and her symptoms had improved. In fact, the
medications helped her a lot. Plaintiff was oriented, calm, and
cooperative, and she performed well on memory testing except for
not remembering recent presidents. She performed simple
mathematical calculations slowly but correctly, and she easily
performed a three-step command. She concentrated fairly well and
carried on a conversation in a timely manner. Dr. Bernardez
reported that Plaintiff stated she was working part-time as an
elderly care provider for two twenty-four hour shifts and one
twelve-hour shift, although she claimed not to be able to perform
housework at home because of her back. Dr. Bernardez's functional
assessment was largely a recitation of Plaintiff's subjective
claims of difficulty in interacting with supervisors or
coworkers, anxiety, inability to concentrate well, lack of
energy, stress, and hearing voices, all of which affected her
inability to function. Dr. Bernardez did not render an opinion as
to Plaintiff's RFC. (Id.)

6

On September 20, 2000, a state agency medical consultant completed a psychiatric review technique and mental RFC assessment and concluded that Plaintiff was not significantly limited in any respect; she retained the ability to remember and understand instructions to perform simple repetitive tasks on a sustained basis without excessive supervision, relate satisfactorily to peers and supervisors, and adjust to ordinary workplace changes. She was mildly restricted in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 337-341, 351-64.)

In August 2001, Plaintiff's treating psychiatrist diagnosed major depression, recurrent and severe with psychosis, and reported that the claimant was unemployable from August 2001 through March 2002 in a one-page form report directed to the General Assistance Program (Tr. 20, 526).

In 2002, Kern County Mental Health medication progress notes reveal that Plaintiff was evaluated as having a moderate disability that prevented her from working, and the expected length of treatment was greater than one year. (Tr. 584, 575, 610, 614, 616, 618.)

On March 31, 2002, Inyegar Malini, M.D., a board certified psychiatrist, consultatively examined Plaintiff (Tr. 20, 568-570). He noted that Plaintiff had good eye contact and was oriented, and her speech was relevant and coherent (Tr. 20, 569). Plaintiff's mood was depressed, her affect was blunted, her insight was fair, and her judgment was adequate to care for herself (Tr. 20, 569-570). He diagnosed major depressive disorder with psychotic features, and polysubstance abuse in remission;

7

her current GAF was 50. Dr. Malini opined that Plaintiff could understand, carry out, and remember simple instructions, and she was able to relate to coworkers, supervisors, and the public in general. (Tr. 20, 570). He noted that Plaintiff's persistence, pace, and ability to adjust to the usual work situations and changes in routine work settings were impaired due to her depressive symptoms (Tr. 20, 570).

In April 2002, state agency medical consultant M. C. Vea, M.D., a psychiatrist, completed a psychiatric review technique and a functional assessment. (Tr. 586-97.) Dr. Vea opined that Plaintiff had an affective disorder and polysubstance abuse in remission that resulted in mild limitations of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace; although she was generally depressed, she was generally stable as well. Her memory was intact, she interacted well at the consultative exam, and she could adapt to changes in a work setting for simple, routine, repetitive tasks. Her history of abuse of methamphetamine and cocaine coincided with her hospitalizations, but she had been clean and sober for five years by 2002. Periods of suicidal ideation and paranoia were fairly rare and resolved quickly; no suicidal ideation was reported in the past year. There had been no significant event between another ALJ's determination in 1999 that Plaintiff was not disabled and Dr. Vea's assessment, and there had been no change in severity. She was capable of simple, repetitive tasks. She was moderately limited in the ability to understand, remember, and carry out detailed instructions but otherwise was not significantly limited with respect to

8

understanding, memory, sustained concentration and persistence, social interaction, or adaptation. (Id.)

On July 2002, state medical consultant Dr. Luyen T. Luu, a psychiatrist, reviewed Dr. Vea's assessment and the file and confirmed the assessment. (Tr. 586, 598-99.) Dr. Luu noted that in May 2002, after Dr. Vea's assessment, Plaintiff appeared less depressed and reported reduced symptoms; she continued to reflect normal thought, adequate social functioning, good eye contact, cooperation, and intact memory, attention, and concentration in June 2002. Plaintiff was only partially credible. (Tr. 598-99.)

In February 2003, Kern County Mental Health medication progress notes show that Plaintiff was evaluated as having a moderate disability that prevented her from working, and the expected length of treatment was greater than one year. (Tr. 611.)

B. Physical Condition

Dr. Emmanuel Dozier performed a comprehensive internal medicine evaluation of Plaintiff in August 2000 in connection with her complaint of chronic back pain for fourteen years and left arm pain of ten years. (Tr. 327-30.) Plaintiff reported a motor vehicle accident in 1986 that caused a lower back injury which was treated with physical therapy and medication; it recently had worsened on bending and lifting. Motrin occasionally resolved it. Plaintiff reported that she could lift fifty pounds but could not stand or sit for a prolonged period and could not perform household chores. The examination revealed that she was in no acute distress, could transfer on and off the table, had a normal gait, normal muscle bulk and tone, normal spinal curve,

9

some paravertebral muscle spasm and sacroiliac joint tenderness bilaterally, normal range of motion, no atrophy of the extremities, and straight leg raising was negative. The diagnosis was chronic mechanical low back pain without radiculopathy, asthma that was stable, and arm pain with an undetermined etiology. There were no significant objective findings. Dr. Dozier opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and walk six hours, and sit six hours with no frequent stooping, bending, crouching, or crawling. There were no other restrictions noted. (Id.)

On September 20, 2000, a state agency medical consultant completed a physical RFC assessment regarding Plaintiff's chronic back strain or pain. (Tr. 342-50.) It was concluded that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, sit about six hours in an eight-hour day, but only occasionally climb, balance, stoop, kneel, crouch, or crawl. She had to avoid concentrated exposure to extreme cold. Dr. Elpidio Fonte, M.D., another state agency medical consultant, confirmed this assessment later in 2000. (Tr. 348.)

In February 2001, Plaintiff visited the emergency room for severe chronic back pain that had recently endured for two weeks with pain radiating down her right leg. She was examined and found to be in no acute distress, with some tenderness at L4-5, flexion of forty-five degrees, and extension of ten degrees. She was treated with Tylenol #3 and compresses. (Tr. 386-91.)

In March 2001 an x-ray taken of Plaintiff's lumbar spine revealed minimal degenerative spurring with the disc spaces maintained. There were calcifications superimposed over the right

1  transverse process that could have been present in the right

2  renal pelvis; an ultrasound was recommended. Plaintiff was

3  prescribed Vioxx and physical therapy. (Tr. 381, 384-85.)

4     Notes of physical therapy in April and May 2001 reveal that

5  Plaintiff's range of motion was within normal limits and lower

6  extremity strength was 4+/5. In April, Plaintiff reported feeling

7  better, and she generally tolerated her exercise regimen well. In

8  May 2001 she was observed with improved endurance, and she

9  reported feeling better with sleeping and walking. She failed to

10 appear for therapy twice in May. (Tr. 511.)

11                    SCOPE AND STANDARD OF REVIEW

12     Congress has provided a limited scope of judicial review of

13 the Commissioner's decision to deny benefits under the Act. In

14 reviewing findings of fact with respect to such determinations,

15 the Court must determine whether the decision of the Commissioner

16 is supported by substantial evidence. 42 U.S.C. § 405(g).

17 Substantial evidence means "more than a mere scintilla,"

18 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

19 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

20 (9th Cir. 1975). It is "such relevant evidence as a reasonable

21 mind might accept as adequate to support a conclusion."

22 Richardson, 402 U.S. at 401. The Court must consider the record

23 as a whole, weighing both the evidence that supports and the

24 evidence that detracts from the Commissioner's conclusion; it may

25 not simply isolate a portion of evidence that supports the

26 decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

27 It is immaterial that the evidence would support a finding

28 contrary to that reached by the Commissioner; the determination

of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. <u>See,</u> <u>Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

<u>ANALYSIS</u>

I. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[3] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and

---

[3] All references are to the 2003 version of the Code of Federal Regulations unless otherwise noted.

5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

II. Onset Date and Presumption of Disability

Preliminarily, the Court notes that in this case, Plaintiff had previously filed for DIB and SSI; her application was denied by a hearing decision dated April 5, 1999. (Tr. 18.) The ALJ found that Plaintiff could perform work at all exertional levels and could perform work requiring simple and repetitive tasks. No review of that decision was sought.

The ALJ who rendered the decision under review here concluded that pursuant to res judicata, the ALJ would not have considered a disability onset date before April 6, 1999 because of this prior finding. (Tr. 18.) However, the ALJ concluded that Plaintiff was engaged in substantial gainful activity until August 23, 2000, and thus he concluded that he would not consider a disability onset date before August 24, 2000. (Tr. 18.)

The ALJ further found that the April 1999 decision created an ongoing presumption that Plaintiff was not disabled which could be overcome by new evidence that Plaintiff's condition had worsened. (Tr. 18.) The ALJ concluded that a review of all the evidence did not establish that Plaintiff's condition had worsened, so she remained not disabled. (Tr. 18.)

Finally, the ALJ concluded that with respect to a period of disability and disability insurance benefits, claimant was

14

insured through December 31, 2001, so she had to establish
disability on or prior to that date. (Tr. 19.)

Plaintiff does not challenge these specific findings.

III. <u>Plaintiff's Subjective Complaints</u>

Plaintiff argues that the ALJ failed to state clear and
convincing reasons for rejecting Plaintiff's testimony. Plaintiff
contends that the medical record and Plaintiff's daily activities
were consistent with Plaintiff's subjective claims, and her
appearance at the hearing was not a sufficient basis upon which
to base a decision.

The existence and severity of a person's reaction to a
physical ailment, such as the existence and severity of pain, are
subjective phenomena, the extent of which cannot be objectively
measured. <u>Byrnes v. Shalala</u>, 60 F.3d 639, 642 (9th Cir. 1995). In
order to reject a claimant's subjective complaints, the ALJ must
provide specific, cogent reasons for the disbelief. <u>Lester v.
Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant
introduces medical evidence of an underlying impairment that
could reasonably be expected to produce some degree of the
subjective symptoms, the Commissioner may not discredit the
claimant's testimony as to subjective symptoms merely because
they are unsupported by objective evidence such as objective
medical findings. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th
Cir. 1996). Unless there is affirmative evidence tending to show
that the claimant is malingering, the reasons for rejecting the
claimant's testimony must be clear and convincing, and the ALJ
must set forth the rejection by identifying what testimony is not
credible and what evidence undermines the claimant's complaints.

Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c) [disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
5. Treatment, other than medication, for relief of pain or other symptoms;
6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ expressly considered Plaintiff symptoms, including pain and her claims of stress and anxiety, depression, hearing voices, paranoia, and short attention span. (Tr. 19-20.) However, he concluded that although she did suffer symptoms of depression and anxiety, her subjective complaints were not credible to the degree alleged. (Tr. 20.)

The ALJ examined the evidence in detail and stated numerous reasons for his conclusions. He first focused on the course of Plaintiff's treatment and the indications of successful treatment with therapy and medications as demonstrated by the medical record and Plaintiff's own statements and reports.

The ALJ noted that since August 2000, Plaintiff had not been hospitalized for any mental problems. Substantial evidence supports this statement because Plaintiff herself reported that her last hospitalization was two years before 2002. (Tr. 568.) He reasoned that the treating psychiatrists at the mental health department generally noted that Plaintiff's symptoms were controlled with medication (Tr. 20), and this reason is supported by substantial evidence in the record (Tr. 566, 558-59, 546, 543, 539, 534, 532, 528, 521, 203, 198). He stated that although her medications were adjusted or changed at times, Plaintiff did not experience any severe side effects or ineffectiveness in control of symptoms (Tr. 20). The record reveals that Plaintiff generally reported a lack of side effects (Tr. 565, 549, 542, 535, 533, 531, 527, 522, 516, 615, 611, 609, 583, 574, 200). One report of a headache was accompanied by Plaintiff's suggestion that she was ill from other causes (Tr. 558), and the dry mouth reported by Plaintiff in August 2002 does not appear to have been a severe side effect (Tr. 607). The ALJ reasoned that medication progress notes showed that the claimant had fair to good compliance with medications, and her response to treatment was good (Tr. 20-21). This is likewise supported by substantial evidence in the record. (Tr. 607, 609, 204-05, 200, 548, 520, 583, 578, 567, 558, 579, 565, 563, 552, 551, 204.) The ALJ noted that Plaintiff also

reported to Dr. Malini that her medications helped (Tr. 21), and the record reveals that Plaintiff told both Drs. Malini and Bernardez that her medications were helpful (Tr. 568, 332).

The ALJ also noted that in April 2002, Plaintiff reported to the treating psychologist that her depressive symptoms were reduced because of increased socialization and activity (Tr. 21); the record supports this finding (Tr. 581). The ALJ stated that Plaintiff reported a plan to travel with a niece and expressed continued happiness with a relationship with her new boyfriend; she herself had often reported that she was feeling fine or good, doing better, or doing fine (Tr. 21). The record supports this finding (Tr. 545, 542, 538, 319, 617, 200, 531, 583). The ALJ also relied on Plaintiff's progress in group therapy, including discharge from one group for successful completion (Tr. 21). Again, the record contains no evidence of lack of success at group therapy.

The ALJ also considered Plaintiff's symptoms. He stated that although her mood was sometimes depressed and sad, it was also shown to be euthymic on many occasions (Tr. 21). The record bears this out (Tr. 574, 565, 558, 549, 583, 321, 205, 200; 533, 522, 549, 545 [sad because a friend had died], 615). He noted that Plaintiff reported having auditory hallucinations and feelings of paranoia only on occasion (Tr. 21), which is generally consistent with the medical record (Tr. 321, 558, 549, 545, 535, 533, 531, 527, 520, 516, 583, 574, 609, 205 [none]; 200 [until medication increased], 606-07 [treated with increased dose of Zyprexa], 617 and 615 [during a stressful period of breaking up with her boyfriend and having to return to live with her husband], 611).

18

Further, he reasoned that Plaintiff's memory, attention, concentration, and orientation were reportedly intact, and her behavior was cooperative (Tr. 21), which was supported by substantial evidence (Tr. 569, 583, 574, 607, 611, 615). He also noted Plaintiff's demeanor (generally good eye contact, normal speech, and appropriate affect). He relied on her thought content, which was consistently within normal limits, and her thought process, which was coherent, relevant, and logical (Tr. 21). Again, substantial evidence supports this finding (Tr. 565, 588, 549, 545, 542, 538, 533, 531, 527, 522, 520, 516, 205, 200).

With respect to Plaintiff's claim of a short attention span, the ALJ reasoned that she responded appropriately to the questions at the hearing and was able to provide detailed histories to the consulting examiners. Plaintiff cites cases critical of an ALJ's reliance on a claimant's appearance at a hearing in the context of claims of pain. See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985), and Day v. Weinberger, 522 F.2d 1154, 1156-57 (9th Cir. 1975). Ability to concentrate differs from pain, which may occur without any objectively observable symptoms. See Freemen v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982), relied on by the court in Perminter v. Heckler, 765 F.2d at 872 (cited by Plaintiff). The ALJ here cited to the objectively observable phenomenon of Plaintiff's ability to attend to and respond to questions. The record supports the finding that she had no difficulty attending to the ALJ's questions. Nevertheless, even if the significance of the ALJ's observations at the hearing is discounted, the record does support the finding that Plaintiff could give detailed

histories to the consulting examiners (Tr. 331-33, 568-69).
Further, the ALJ noted that Plaintiff's memory had been described
as intact by the treating and consulting psychiatrists (Tr. 21).
This finding is supported by substantial evidence in the record
(Tr. 569, 583, 574, 607, 333 [successful completion of memory
examination with the exception of not being able to remember
recent presidents]).

The ALJ concluded that the overall medical evidence and
reported daily activities did not support the claimant's
allegations that she was prevented from all substantial gainful
activity. Plaintiff asserts that the record is really consistent
with Plaintiff's claims of disabling symptoms because her
treating physicians continuously stated that she was unable to
work. However, as will be discussed below in connection with
Plaintiff's arguments concerning the ALJ's handling of the
opinions of the various medical care providers, substantial
evidence supports the ALJ's findings. Further, the foregoing
review of the ALJ's evaluation of Plaintiff's symptoms shows that
substantial evidence supports a finding that Plaintiff's reported
symptoms, which were controlled with medication, generally were
not consistent with a claim of disabling depression, paranoia,
and hallucinations.

Plaintiff asserts that the physical therapy notes of April
and May 2001 are consistent with the limitations to which
Plaintiff testified. The notes indicate Plaintiff's initial
complaints of inability to stand for over twenty minutes or walk
a block before pain started, but it was noted that Plaintiff
tolerated the exercises well without fatigue but with some pain.

She began to feel better and was able to tolerate her movement very well, showing improved endurance and good evidence of compliance with the home exercise program (Tr. 373-79, 511). Thus, the record does not reflect the consistency that Plaintiff claims.

The ALJ concluded that Plaintiff's reported daily activities did not support her allegation of inability to engage in substantial gainful activity (Tr. 21). Plaintiff testified that she could perform crafts (albeit for a short period) and laundry. Her daily activities questionnaires of November 2001 and July 2002 (Tr. 469-74, 493-500) reveal that Plaintiff reported making her bed, vacuuming, doing some housework (cleaning, laundry, maintenance, ironing, etc.) without help, feeding her cat, preparing her husband's and her own meals by cooking all kinds of food, and she had no difficulty in caring for her own personal needs or going out without assistance. In her first survey, she stated that she could read books and remembered most of what she read; in her second one, she said she sometimes forgot what she read in the paper or got things mixed up. She reported that she did not have trouble finishing a task, although she occasionally forgot some directions and sometimes needed to be reminded of where she was in completing a chore because she was easily distracted; she claimed to forget very important things, like taking her medication. She went out three or four times a week by walking without help; she participated in church groups twice a week. She played dice games, but someone had to keep score; she swam. When she no longer lived with her husband, due to her bad back she needed a ride and help with her bags in order to shop.

She had no difficulties getting along with family or others,
although she did not mix well with some people. Her condition
kept her from working in that she got too stressed, nervous, and
edgy trying to work, and her medications and her inability to
stand on her feet for eight to twenty hours a day also kept her
from working. In her first questionnaire, she stated that she had
never lost a job because of her condition. In her second one, she
stated that she had been fired because she had to go to meetings,
and the woman for whom she cared did not call her back because
Plaintiff once burned dinner. She napped every three or four
hours. The record thus provides substantial support for the ALJ's
findings regarding Plaintiff's own accounts of her activities of
daily living.

      The ALJ also relied on the report of Plaintiff's husband
signed in November 2001 to the effect that Plaintiff was peaceful
when she took her medications, could follow instructions and
finish tasks or chores without problems, and attend Bible study
weekly (Tr. 21, 475-80), and the report of her friend and
roommate in July 2002 that she could shop with family members,
ride the bus, and watch movies on television (Tr. 487-92). Again,
although Plaintiff needed occasional assistance with shopping
lists, bus choices, or completing chores, the record supports the
ALJ's conclusions regarding the reported activities of daily
living.

      The reasons stated by the ALJ were based on factors that are
appropriately considered. An ALJ may rely on the conservative
nature of treatment in rejecting a claimant's subjective
complaints. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir.

1995). It was appropriate for the ALJ to consider the lack of
objective indicia of Plaintiff's impairments, including lack of
objective clinical findings, inconsistent activities of daily
living, use of conservative treatment, extent of efforts to
obtain relief, and effectiveness of medications in controlling
the symptoms. Soc. Sec. Ruling 96-7p and 20 C.F.R. §
416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th
Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991);
Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Included in
the factors that an ALJ may consider in weighing a claimant's
credibility are the claimant's reputation for truthfulness;
inconsistencies either in the claimant's testimony or between the
claimant's testimony and the claimant's conduct, daily
activities, or work record; and testimony from physicians and
third parties concerning the nature, severity, and effect of the
symptoms of which the claimant complains. Thomas v. Barnhart, 278
F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether
the Plaintiff's testimony is believable or not. Verduzco v.
Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). A claimant's ability
to engage in activities of daily living to the extent that he or
she spends a substantial part of his day engaged in pursuits
involving the performance of physical functions that are
transferable to the work setting is relevant; a specific finding
as to this fact may be sufficient to discredit a claimant's
allegations. Morgan v. Commissioner of Social Sec. Admin., 169
F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947,
959 (9th Cir. 2002).

In the present case, although there might have been factors

supporting Plaintiff's credibility, the ALJ articulated clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints of pain. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004). The Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints to the extent alleged, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

IV. Expert Opinions

A. Rejection of Treating Physician's Opinion

Plaintiff contends that the ALJ's rejection of the treating physician's opinions was not supported by substantial evidence.

The ALJ noted the treating physician's diagnosis in August 2001 that Plaintiff had major depression, recurrent, and severe psychosis, and his conclusion that Plaintiff was unemployable (Tr. 20). Then, as has been detailed above, the ALJ exhaustively reviewed the evidence in connection with Plaintiff's subjective complaints and rejected her credibility with respect to her claim of disabling symptoms (Tr. 20-21). He concluded that the evidence did not show that she could not function socially or occupationally, and she had only mild limitations in activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace (Tr. 21).

The ALJ rejected the treating psychiatrist's opinion that Plaintiff was unable to work because it was rendered in

connection with qualifying Plaintiff for continuing general relief benefits (Tr. 22). The correct standard with respect to an opinion's purpose is that in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). Although the purpose for which an opinion is provided is not by itself a legitimate basis for evaluating the reliability of the report, evidence of the circumstances under which a report was obtained and its consistency with other records, reports, or findings could form a legitimate basis for evaluating the reliability of the report. Id.

Here, the ALJ also concluded that other evidence undermined the credibility of the treating physician's opinion. He noted that the opinion was not supported by the very brief chart notes, that some records indicated that Plaintiff's social and work functioning were adequate, and that generally Plaintiff's symptoms were controlled (Tr. 22). Thus, consideration of the purpose of the report was not incorrect.

Plaintiff implies that because the ALJ expressly mentioned only one opinion of the treating physician, he must have overlooked the other instances in which Dr. Desai or treating sources opined that Plaintiff was disabled. However, the ALJ expressly noted some of the exhibits containing these later opinions (Exhibits C-4F and C-8F) in connection with his finding (Tr. 22). Further, he acknowledged Plaintiff's long treatment history earlier in the decision, naming these same exhibits again as well as Exhibits C-8F-10F (Tr. 20). Finally, two of sets of

inconsistent treatment notes cited by the ALJ were made in connection with two of the later opinions. The ALJ's decision is reasonably interpreted as referring to the multiple instances in which the treating sources opined that Plaintiff was disabled.

Plaintiff undertakes a long review of the extensive record in this case in an apparent attempt to demonstrate that substantial evidence did not support the ALJ's finding regarding the inconsistent treatment notes. As previously noted, substantial evidence supports a finding that Plaintiff's symptoms were controlled. Further, as the ALJ noted, in two instances, the treating source's opinion of disability was accompanied by treatment notes that indicated that Plaintiff had adequate (the highest rating) school, social, and work function (Tr. 574 [June 2002], 607 [August 2002]). Substantial evidence supports the ALJ's findings. It is for the ALJ, and not this Court, to resolve any conflicts in inconsistent medical evidence, Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999), and to determine credibility, Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

These factors, coupled with the treating sources' obvious reliance on Plaintiff's discredited credibility, are more than sufficient to constitute specific, legitimate reasons for rejecting the treating physician's controverted opinion. Further, they are sufficiently probative to constitute clear and convincing reasons. It is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a

physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The fact that an opinion is based primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

Accordingly, it is concluded that the ALJ's rejection of the treating sources' opinions was made according to correct legal standards and was supported by substantial evidence.

B. Consulting Examiner's Opinions

The ALJ rejected the opinion of consulting examiner Dr. Bernardez because her opinion that Plaintiff's symptoms affected her ability to function was vague, and it was merely a summary of Plaintiff's subjective complaints (Tr. 20). The record reveals that Dr. Bernardez never stated any precise functional limitations or RFC, and her functional assessment consisted substantially of a recitation of Plaintiff's subjective complaints; thus, the record supports the ALJ's rejection of her opinion. Further, as previously noted, this constitutes a specific and legitimate reason for rejecting the opinion.

With respect to Dr. Malini's opinion, the ALJ stated:

I am giving great weight to Dr. Malini's opinion

27

> that the claimant can perform work requiring simple
> job instructions. However, his other assessed
> limitations are not supported by his clinical findings
> or by other evidence in the record, especially
> considering the claimant's ability to engage in
> a multitude of daily activities.

(Tr. 22.) Plaintiff states that the ALJ "rejects Dr. Malini's limitations that are inconsistent with his own predetermined conclusions based upon Bertha Watrous' daily activities," (Brief at 7); Plaintiff then reviews other evidence in the record, consisting of Plaintiff's testimony and pain questionnaires as well as the third party questionnaires, and asserts that the evidence is not inconsistent with Dr. Malini's conclusions.

The portion of Dr. Malini's opinion rejected by the ALJ was that Plaintiff was impaired with respect to her persistence, pace, and ability to adjust to the usual work situations and changes in routine work settings (Tr. 570). Dr. Malini based his opinion on Plaintiff's "chronic depressive symptoms" (Tr. 570), which were apparently related to Malini by Plaintiff herself.[4] Plaintiff had told Dr. Malini that she was depressed and anxious, had problems hearing voices, was paranoid, shot her husband, was suicidal two years previously, had erratic appetite and sleep, lacked motivation and interest in her usual activities, had fatigue, and took specified medications that helped some (Tr. 568-69). However, the only findings, as distinct from Plaintiff's own reports of her subjective complaints, in Dr. Malini's report were that Plaintiff had a depressed mood and blunted affect, coherent and relevant speech, was oriented to time, place, and

---

[4] Dr. Malini stated that he had reviewed "a couple of handwritten notes from Kern County Mental Health." (Tr. 568.)

person, and had grossly intact memory, fair insight, and judgment adequate to care for herself (Tr. 569-70). These findings do not indicate any restriction of persistence, pace, or ability to adjust to the usual work situations and changes in routine work settings. Substantial evidence thus supports the ALJ's conclusion that Dr. Malini's clinical findings did not support his vague assessments of her limitations.

With respect to Plaintiff's claims regarding the status of the medical record, the Court has previously reviewed the record of Plaintiff's subjective complaints, which were appropriately discounted by the ALJ, and of Plaintiff's daily activities, which the ALJ appropriately found were inconsistent with Plaintiff's claims of disabling limitations.

The ALJ's rejection of Dr. Malini's limitations was supported by specific and legitimate reasons that in turn were supported by substantial evidence in the record.

C. State Medical Consultants

Plaintiff argues that the state agency physicians' opinions 1) are not consistent with the record or any of the examining physicians' opinions, and 2) cannot by themselves constitute substantial evidence that justifies the rejection of the opinions of the examining or treating physicians. Defendant does not respond to this contention and notes only that the report of the state agency physicians are to be considered expert opinion evidence.

The medical opinion of a nontreating doctor may be relied upon instead of that of a treating physician if the ALJ provides specific and legitimate reasons supported by substantial evidence

29

1    in the record. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th

2    Cir. 2001). The opinion of a nontreating, nonexamining physician

3    can amount to substantial evidence as long as it is supported by

4    other evidence in the record, such as the opinions of other

5    examining and consulting physicians, which are in turn based on

6    independent clinical findings. <u>Andrews v. Shalala</u>, 53 F.3d 1035,

7    1041 (9th Cir. 1995).

8         Here, the state agency physicians' opinions that Plaintiff

9    was only mildly limited in activities of daily living,

10   maintaining social functioning, and maintaining concentration,

11   persistence, or pace, were supported by the clinical findings of

12   the consulting examiner, which have been previously detailed, and

13   were consistent with the longitudinal history of Plaintiff's

14   reaction to treatment and progress in general when viewed in the

15   context of the 1999 finding of no disability. Substantial

16   evidence supported the ALJ's acceptance of the opinions of the

17   state agency consultants.

18        V. <u>Exertional Limitations</u>

19        Plaintiff contends that the ALJ failed to evaluate

20   Plaintiff's exertional limitations.

21        Because Plaintiff was found not disabled in the prior

22   decision of the ALJ in 1999, there was a continuing presumption

23   of nondisability that Plaintiff was required to overcome by

24   proving changed circumstances indicating a greater disability.

25   <u>Chavez v. Bowen</u>, 844 F.2d 691, 693-94 (9th Cir. 1988). The ALJ

26   expressly found that after a review of all the evidence, the new

27   evidence did not establish that the claimant's condition had

28   worsened, and she still remained not disabled. (Tr. 18.)

In the earlier disability proceeding, Plaintiff had claimed
that she had suffered a complete physical breakdown (Tr. 72). The
ALJ's 1999 determination included a finding that Plaintiff had no
severe physical impairment (Tr. 74). He rejected her subjective
claims of excess pain and limitations on the few complaints of
physical pain made to medical personnel, the absence of the use
of strong analgesics ordinarily prescribed for severe and
unremitting pain, the lack of any restrictions of activities or
opinions of disability from her treating sources, her ability to
care for herself and her activities of daily living, the absence
of objective medical evidence or findings, and the lack of
atrophy, severe weight loss, or sleep deprivation from pain (Tr.
75). He concluded that Plaintiff had the RFC to perform all
levels of substantial gainful work activity on a sustained basis.
(Tr. 78.)

The ALJ who later rendered the decision presently being
considered expressly concluded that the new evidence did not
establish that Plaintiff's condition had worsened; Plaintiff
still remained not disabled (Tr. 18). He concluded that she had
the RFC to perform work at all exertional levels involving simple
job instructions with limited public contact (Tr. 22). Review of
the ALJ's decision reveals that he did not expressly mention the
expert opinions of Dr. Dozier, the examining physician, and the
state agency physicians that essentially limited Plaintiff to
light work[5] with postural limitations. The ALJ made no finding

---

[5]Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to
10 pounds. 20 C.F.R. §§ 404.1567(b) (DIS), 416.967(b)(SSI). Light

that there was a severe physical impairment. (Tr. 19.) He
discussed the opinions relating to Plaintiff's mental condition
in detail (Tr. 20-21), and he stated the weight he gave to them
and the reasons for his evaluations (Tr. 22). He reviewed
Plaintiff's activities of daily living in the context of
Plaintiff's depression and anxiety (Tr. 21). He did not mention
Plaintiff's subjective symptom of back pain or her continuing
back problems in his opinion. His conclusion that Plaintiff could
perform work at all exertional levels was reached without mention
or evaluation of the evidence of Plaintiff's painful back
condition, including expert opinions restricting Plaintiff
physically to light work with postural limitations.

    A fundamental principle of review operative in this case is
that this Court is limited to reviewing the findings of the ALJ
and to reviewing the specific facts and reasons that the ALJ
asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)
(holding in part that the mere presence of evidence in the record
that would support an ALJ's conclusions, in the absence of the
ALJ's discussion thereof, was insufficient). An ALJ need not
discuss evidence that is neither significant nor probative.
Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). However,
with respect to significant, probative evidence, such as an
expert opinion, an ALJ must explicitly reject the opinion and set
forth specific reasons of the requisite force for doing so.
Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding

work is thus significantly less demanding exertionally than the
work at all exertional levels which the ALJ found that Plaintiff
could perform (Tr. 22, 24).

that the ALJ erred in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting another opinion). The district court cannot make findings for the ALJ. Id. A district court cannot affirm the judgment of an agency on a ground the agency did not invoke in making its decision. Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). Even application of the harmless error rule is circumscribed by this basic requirement. It has recently been held that where an error consists of an ALJ's failure to discuss probative evidence properly, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the evidence, could have reached a different disability determination. Stout v. Commissioner of Social Security, – F.3d. –, 2006 WL 2052306 at *5 (July 25, 2006) (concluding that an ALJ's failure to evaluate and state reasons for evaluating lay testimony was not harmless). The authorities thus reflect the fundamental principle that the ALJ's opinion must contain sufficient findings to permit intelligent judicial review, particularly with respect to significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, the ALJ impliedly found that there was no severe physical impairment. However, there was expert opinion evidence to the effect that Plaintiff had a significantly reduced RFC due to a physical impairment. The evaluation of Plaintiff's physical condition was a necessary step in the determination of Plaintiff's condition, her RFC, and whether or not she had met her burden of showing changed circumstances. The ALJ's failure to

33

make any findings regarding the physicians' expert opinions regarding Plaintiff's physical conditions and exertional and non-exertional limitations effectively leaves this Court with nothing to review. This Court cannot make independent findings regarding those opinions and any other evidence[6] concerning Plaintiff's back condition. If the evidence were credited, then a reasonable ALJ could have found that she had showed changed circumstances in that she would have a more limited RFC (light work with significant postural limitations) and potentially an inability to perform her past relevant work. A different conclusion as to disability was possible.

It is true that had the ALJ expressly rejected the evidence of Plaintiff's back impairment and its effect on her ability to work with a statement of reasons, there was evidence that would have supported a rejection on some grounds. However, the determinative characteristic of the ALJ's decision is that the ALJ failed expressly to consider, and state reasons for rejecting, significant probative evidence that Plaintiff's back condition rendered her able to perform only light work. There is no basis for this Court meaningfully to review any analysis of the ALJ in this regard.

Citing <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995), Defendant further argues that in any event, even if the

---

[6] With respect to the objective medical evidence, Plaintiff points to the opinions of Dr. Dozier and the state agency physician from August and September 2000 as well as evidence that Plaintiff continued to experience lower back symptoms and receive treatment thereafter in 2001 (Tr. 384-91, 373-79, 511). This evidence includes x-rays showing degenerative spurring and calcifications, treatment notes reflecting clinical signs, such as positive straight leg raising and paravertebral tenderness at L4-5 as well as opinions of examining and non-examining expert physicians experts limiting Plaintiff to light work with nonexertional postural limitations

1 ALJ erred, it does not matter because at step five of the

2 sequential analysis, Plaintiff would necessarily be capable of

3 performing other work pursuant to 20 C.F.R. Part 404, Subpart P,

4 Appendix 2, § 201.21, which provides that if an individual is

5 capable of performing sedentary work,[7] is, as is Plaintiff, of

6 younger age (forty-five to forty-nine), has a high school

7 education or more, and a skilled or semi-skilled work history

8 with skills not transferable, then the person is not disabled.

9      However, application of Rule 201.21 would require a finding

10 regarding the skill level of Plaintiff's work history, a finding

11 which does not appear in the record. More fundamentally,

12 Defendant's assumption for application of § 201.21 is that

13 Plaintiff would be capable of performing a full range of

14 sedentary work. However, according to the physicians who

15 evaluated Plaintiff's condition, Plaintiff had non-exertional

16 limitations (postural limitations of only occasional climbing,

17 balancing, kneeling, stooping, bending, crouching, and crawling),

18 and of whether those factors, in combination with what the ALJ

19 has already found to be Plaintiff's non-exertional limitations of

20 being limited to simple one- and two-step job instructions and

21 limited, if any, public contact (Tr. 22), reduced the available

22 jobs. It is for an ALJ in the first instance to consider these

23 matters, make findings, determine whether any additional evidence

24 is required, and to conclude with respect to the existence and

25 severity of all Plaintiff's impairments, Plaintiff's RFC, and

26

27

28        [7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a).

1  whether Plaintiff could perform past relevant work or other work

2  existing in the economy.

3      VI. <u>Past Relevant Work</u>

4      The ALJ found that Plantff could perform her past relevant

5  work. It is unclear whether this determination will be the same

6  upon remand because earlier steps in the five-step analysis are

7  subject to change, and because the precise capacities and skills

8  required by Plaintiff's past relevant work as performed or as

9  customarily performed are unclear from the ALJ's decision.

10     However, the Court notes that Plaintiff argues that the ALJ

11  made errors in his consideration of Plaintiff's past work as a

12  certified nursing assistant. Plaintiff argues that the ALJ

13  incorrectly considered it as past relevant work because the

14  <u>Dictionary of Occupational Titles</u> (DOT) states that the specific

15  vocational preparation required for the position is level 4, and

16  that over three months of performance of the job is required,

17  whereas Plaintiff performed the work for only three months, so

18  that the work did not last long enough for her to learn it within

19  the meaning of §§ 404.1565(a) and 416.965(a), which define past

20  work as relevant only when it lasted long enough for the claimant

21  to learn it. Further, Plaintiff notes evidence that she did not

22  have to perform heavy work and was on light work duty (Tr. 64-65,

23  172). Finally, she contends that she cannot perform her past

24  relevant work because it required reasoning level 3, which

25  Plaintiff argues exceeded a limitation to one- and two-step

26  instructions. Upon remand, the ALJ will address the evidence

27  concerning Plaintiff's exertional and nonexertional limitations,

28  consider and determine again whether Plaintiff could perform her

past relevant work and any other work, and address these

contentions and make all pertinent findings.

<u>DISPOSITION</u>

_____In summary, the Court concludes that although the ALJ's

findings concerning Plaintiff's credibility and the expert

opinions concerning Plaintiff's mental condition were made

according to correct legal standards and were supported by

substantial evidence, the ALJ failed to consider significant

probative evidence concerning additional exertional and non-

exertional limitations, to evaluate any such impairments in

combination with all others, and to continue through the

sequential analysis in light of the determinations made with

respect to those issues, including formulating Plaintiff's RFC,

determining what Plaintiff's past relevant work was, and

considering and determining whether Plaintiff could perform her

past relevant work or other work in accordance with the foregoing

decision.

When a court reverses an administrative agency

determination, the proper course, except in rare circumstances,

is to remand to the agency for additional investigation or

explanation. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004)

(citing <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002)). In light of the

state of the evidence, remand is warranted in this case.

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED in part,

and

2. The matter IS REMANDED pursuant to sentence four of 42

U.S.C. § 405(g) for the ALJ to consider further, consistent with

37

this decision, Plaintiff's status as disabled, including whether
Plaintiff suffered additional exertional and non-exertional
limitations and was thereby impaired, to evaluate any such
impairments in combination, and to continue through the
sequential analysis in light of the determinations made with
respect to those issues, including formulating Plaintiff's RFC,
determining what Plaintiff's past relevant work was, and
considering and determining whether, on the basis of the
Plaintiff's age, education, work experience, and residual
functional capacity, Plaintiff could perform her past relevant
work or other work; and

3. Judgment BE ENTERED for Plaintiff Bertha Watrous and
against Defendant Jo Anne B. Barnhart.


IT IS SO ORDERED.

**Dated:    September 7, 2006              /s/ Sandra M. Snyder**
icido3                                    UNITED STATES MAGISTRATE JUDGE